ISAAC G. SMOCK

*v.*

SAMUEL W. JONES et al.

To a bill to foreclose a first mortgage, the holders of the second and third mortgages on the premises were made defendants; also the wife of the mortgagor, who held the fourth mortgage thereon, and also the assignee for the benefit of creditors under an assignment by the mortgagor. The answers of the second and third mortgagees set up fraud in the consideration of the fourth mortgage, but before this matter had been fully inquired into, all the parties entered into a written agreement that the premises should be sold, saving all questions of priority &c. The second and third mortgagees had no interest in the validity of the fourth mortgage, and had set up their objection thereto by answer instead of by cross-bill, as the practice then required. The assignee for the benefit of the mortgagor's creditors having been misled by those answers and by his expectation that the *bona fides* of the fourth mortgage could be investigated thereunder, was afterwards allowed to file an answer in the nature of a cross-bill, attacking the fourth mortgage for fraud therein.

<hr>

On bill to foreclose. Motion for leave to amend answer and file a cross-bill, if necessary. On order to show cause and affidavits on both sides.

*Mr. R. Allen, Jr.,* for the motion.

*Mr. W. H. Vredenburgh, contra.*

THE CHANCELLOR.

The bill in this cause was filed April 10th, 1879, to foreclose a mortgage on the farm of the defendant Samuel W. Jones, in Monmouth county. Mary Willetts, who held a mortgage on part of the farm, the board of chosen freeholders of the county of Monmouth, which held a mortgage on another part, and Letty A. Jones, wife of the mortgagor, who held a subsequent mortgage on the whole of the property, were, with the mortgagor, her husband, and Chilion Robbins, his assignee under an assignment for the equal benefit of his creditors, made parties. Mrs. Jones was made a party both in respect of her right of dower in the premises and her mortgage. Answers were put in by the holders of each of the mortgages and also by the assignee. Those of Mary Willetts and the board of chosen freeholders were put in June 24th, 1879, that of Mrs. Jones, September 12th, 1879, and the answer of the assignee on the 10th of October following. The answers of Mary Willetts and the board of chosen freeholders, besides setting up their respective mortgages, both of which were prior to that of Mrs. Jones, attacked the latter on the ground that it was without consideration and made to defraud Jones's creditors. Jones gave the mortgage held by his wife to his son, who assigned it to her May 6th, 1879. He made his assignment the next day. By her answer Mrs. Jones claimed that all the money secured by her mortgage was due to her thereon. The assignee, by his answer, so far as her mortgage was concerned, admitted the making of it, but asked that there might be a reference to ascertain the amount due thereon. The cause was referred to one of the advisory masters, and it appears that some testimony was taken before him in relation to the *bona fides* of that mortgage, but before the testimony was declared closed the mortgagees and the assignee, in view of the fact that it was very desirable that a sale of the property should be had in the Spring, agreed to a sale of it under the complainant's mortgage, the validity and priority of which were admitted. The agreement was in writing and was made December 27th, 1879. It contained the following provision:

2

" Saving and reserving all questions as to the priorities of the several mortgages thereon, as to the payment of the moneys to the several parties interested therein, and whether the same [the property] should be sold together or in parcels."

A decree was accordingly entered February 1st, 1880, directing that the property be sold. The premises were sold under the execution March 10th, 1880. Jones's brother attended the sale at the request of Mrs. Jones, and bid for the property, but was not the highest bidder. It was struck off to Henry S. Little at $13,350 or thereabouts, and he subsequently sold and conveyed it to Mrs. Jones at an advance of $1,000 over the price at which he bought it. Out of the proceeds of the execution sale the amounts due to the complainant, Mary Willetts and the board of chosen freeholders, respectively, were paid, and the rest of the money, $1,468.88, was paid into this court. From that time until the filing of the cross-bill hereafter to be mentioned, no step was taken in the cause. Early in 1881 the assignee filed his cross-bill to set aside Mrs. Jones's mortgage on the ground of fraud. It was filed without leave. She demurred to it, and the demurrer was sustained. The order sustaining the demurrer was entered November 9th, 1883. On November 20th, 1883, Mrs. Jones filed her petition in the cause for the payment of the money in court to her on account of her mortgage. No adjudication was made upon it. On December 11th, 1883, an order was obtained by the assignee, on affidavits, requiring her to show cause why he should not have leave to amend his answer by setting up the defence of fraud against her mortgage, and to file a cross-bill against her, if necessary, to set aside the mortgage on that ground. The assignee was not aware of the existence of the objection to the mortgage in question when he put in his answer. About the time when the agreement to sell was made, he first learned of it, and then ascertained also that the matter was in the course of litigation before the advisory master under the answers of Mary Willetts and the board of chosen freeholders, and he understood and believed, he says, that the question of the bona fides of the mortgage, and whether anything was due upon it, would be tried and adjudicated upon under those answers. He also says that

Smock *v.* Jones.

he intended to bring those matters to trial under the pleadings as they then were, or if not appropriate, then under others to be filed by himself for the purpose, but awaited the result of the sale, desiring to ascertain whether there would be any surplus after paying the other mortgages before incurring any expense in the matter. There is no reason to doubt that he in good faith intended to test the validity of the mortgage. The proceedings were in fact not apt for the purpose. The defence to the mortgage was set up by two prior mortgagees, and it was set up in their answers only and not by cross-bill, as the practice then required. Nor could they have obtained leave to file a cross-bill had they applied for it, because being prior mortgagees they had no interest in the question of the validity of that mortgage.

It is urged in opposition to this motion that the agreement before referred to was an abandonment, not only of all litigation of the question, but of all intention to litigate it. But the evidence does not sustain this claim. Apart from what the counsel of the complainant and the counsel of Mary Willetts and of the board of chosen freeholders and the assignee himself swear was their understanding of the agreement, the instrument itself is evidence that there was no intention to do anything more than effect a sale of the property and transfer the litigation from the land to the proceeds of the sale. The agreement expressly reserves all questions as to the priorities of the several mortgages (all of them), and as to the payment of the moneys to the several parties interested therein, and also as to whether the premises should be sold as a whole or in parcels. Clearly, there is no evidence of an intention to abandon any defence, but directly the contrary.

It is also urged that justice to Mrs. Jones requires that the assignee be not permitted to question the validity of her mortgage now, because, believing that all such question was put at an end by the agreement for sale, she procured her brother-in-law to attend the sale and bid upon the property. There is no weight in that objection.

It is also urged that the application comes too late—that the motion for leave to file a cross-bill should have been made at the

time of putting in the answer. But as already stated, the as-signee swears that he did not know of the defence when he filed his answer, and therefore did not set it up. This application differs essentially and radically from the application of a defend-ant to amend his answer so far as the complainant's claim to relief against him is concerned, and most of the rules which govern in such cases are not applicable to this. This is not an application of a defendant to change or add to his defence to the complain-ant's suit against him, but is a request by a defendant in a suit *in rem* for leave to put in a defence against the claim of a co-defendant. Obviously, leave should be readily given in such a case, unless there be special circumstances to forbid. There is nothing in the conduct of the assignee to induce the court to deny him the desired opportunity. It is not alleged that Mrs. Jones will be prejudiced in any way by the delay which has taken place, and a satisfactory excuse is given for it. The leave will be granted. Under the present practice a cross-bill will not be necessary. The defence may be set up by way of cross-bill in the answer, which may be amended accordingly. The assignee, however, should pay Mrs. Jones her costs of this appli-cation.